# MICHAEL VESPOLI *v.* PASQUALE PAGLIARULO
## (13621)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued March 28—decision released July 4, 1989

*Paul M. Geraghty,* for the appellant (defendant).

1

*Michael J. Whalen,* with whom, on the brief, was *Martin Looney,* for the appellee (plaintiff).

GLASS, J. The plaintiff brought this action against the defendant as guarantor on a lease agreement for damages arising from the lessee's breach of the lease. The trial court found for the plaintiff and awarded $34,977.23 in damages and $5246.58 in attorney's fees. On appeal, the defendant claims that the trial court erred in (1) applying an improper standard to determine whether the plaintiff had mitigated damages, and (2) awarding attorney's fees without any proof of the amount of fees incurred. We find no error.

In 1985, the plaintiff, Michael Vespoli, doing business as Vas Realty, purchased a commercial "strip" shopping center on Orange Street in West Haven. The defendant, Pasquale Pagliarulo, guaranteed the lease obligations of one of the shopping center tenants, LaDifferenze Restaurant, on property which he had previously leased. In May, 1986, LaDifferenze defaulted on its rent obligations. The next month, the plaintiff served a notice to quit upon LaDifferenze, and sent accountings and invoices to the defendant. On June 19, 1986, the plaintiff instituted a summary process action against LaDifferenze. Thereafter, judgment was rendered against LaDifferenze and, on July 31, 1986, the plaintiff sent notice of the judgment to LaDifferenze. The plaintiff received no rent from either LaDifferenze or the defendant after commencing the eviction action in June. Equipment belonging to the defendant remained on the property throughout the summer.

The defendant remained on the property until September, 1986, when he finally removed his equipment. Thereafter, the plaintiff expended $5000 on restorations and had the property listed with a real estate broker as available for lease. The property neverthe-

less remained vacant for the duration of the lease term. The plaintiff brought the present action in December, 1986.

At the trial, the defendant and his partner, Frank Santoro, testified that during the summer of 1986, they presented new potential tenants to the plaintiff and promised to guaranty the lease as before, but that the plaintiff was not interested in their proposals. The plaintiff testified that the conversations never took place. The plaintiff's counsel represented at trial that he had contacted the defendant and Santoro on three occasions in August and September, 1986, to determine when the defendant would leave the premises. He stated that "[o]n September the fourth I spoke to [Santoro] and told him to get out, that we were no longer interested in listening to potential possibilities." At the conclusion of the trial, the trial court rendered judgment for the plaintiff and awarded damages, and included an award of attorney's fees based on 15 percent of the damages for the breach.

Assuming, as do the parties, that in instituting the summary process action against LaDifferenze, the plaintiff manifested an intention to terminate the lease; *Sagamore Corporation* v. *Willcutt,* 120 Conn. 315, 318, 180 A.2d 464 (1935); the plaintiff "was entitled to recover those damages which would naturally flow from a total breach of the lease. . . . [He] was also under an obligation, however, to . . . make reasonable efforts to minimize damages. What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier. *Connecticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 442, 288 A.2d 415 (1971). Since the general rule for the measure of damages in contract is that the award should place the injured party in the same position as he would have been in had the contract been performed; *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 404–405, 365

A.2d 1086 (1976); in assessing the reasonableness of the landlord's efforts to mitigate damages the trier may consider whether the landlord was justified in refusing to rent the demised premises to a prospective tenant who was otherwise satisfactory and who would have put him in at least as good a position as if the original contract had been fully performed." *Danpar Associates* v. *Somerville Mills Sales Room, Inc.*, 182 Conn. 444, 446, 438 A.2d 708 (1980).

The defendant's first claim, that the trial court applied an improper standard to determine whether the plaintiff had mitigated his damages, is without merit. The record shows that defense counsel argued that the plaintiff would have had no duty to mitigate damages if he had not terminated the lease. After he conceded to the trial court that, in terminating the lease, the plaintiff did not lose the right to sue for damages, counsel and the trial court engaged in the following exchange:

"Mr. Geraghty: But the issue now, as far as his duty to mitigate, because he has terminated the leasehold agreement, such as terminating a contract, he now has a duty to mitigate in a contract, since it's not in a commercial leasehold sense. And I think the burden there, the duty to mitigate there is greater than it would be otherwise.

"The Court: Mr. Whalen?

"Mr. Whalen: I quite frankly, don't know the difference between the obligation—

"The Court: I'll tell you. It's a less—the burden is a lesser burden in a commercial property, to mitigate, than it is on a—[unintelligible]. For instance, if a person—well, never mind. . . ."

The defendant asks us to infer from the trial court's final comment that it applied a standard of mitigation

less exacting than the "reasonableness" standard of *Danpar Associates*. Aside from this single cryptic, partially transcribed, incomplete observation, there is nothing in the record to indicate that the trial court did not consider the plaintiff's reasonableness in mitigating damages in accordance with *Danpar Associates*. The defendant made no effort, by way of either a subsequent question to the court during trial or a motion for articulation after trial, to determine whether the trial court applied a less exacting standard of "reasonableness." Further, the evidence fully supports a conclusion that, as *Danpar Associates* requires, the plaintiff did take reasonable steps to mitigate damages following the lessee's breach. The defendant's first claim, therefore, is rejected.

The defendant next claims that the trial court erred in awarding the plaintiff attorney's fees without receiving any evidence as to the amount of fees actually incurred. The lease agreement provided for attorney's fees "incurred by the Lessor in the enforcement of the Lessee's obligations hereunder." The record discloses that the trial court asked counsel for the plaintiff whether it should award attorney's fees in the amount of 15 percent of the damages awarded for breach of the lease. Plaintiff's counsel responded: "That sounds fair, Your Honor." Immediately thereafter, the court calculated the amount of fees as $5246.58. Counsel for the defendant thereupon asked: "And twenty-eight cents, Your Honor, or fifty-eight cents?" The trial court repeated the amount, and the defendant's counsel said, "Okay." The defendant did not object to the amount of attorney's fees awarded, or take exception to the trial court's reliance on plaintiff's counsel's representation that 15 percent of the damages awarded was an appropriate amount for attorney's fees.

"[A] contract clause providing for reimbursement of 'incurred' fees permits recovery [of such fees] upon the

presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment." *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 246, 440 A.2d 306 (1982). "[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Bizzoco* v. *Chinitz,* 193 Conn. 304, 310, 476 A.2d 572 (1984).

In the absence of any objection by the defendant, the trial court's reliance on the plaintiff's counsel's acknowledgement that 15 percent of the damage award was fair satisfied the requirement of an evidentiary basis for the award of attorney's fees. While it might have been preferable for the plaintiff to have introduced an invoice of fees actually incurred, the defendant acquiesced to the evidentiary basis that the trial court did employ and, therefore, cannot claim error therein.

There is no error.

In this opinion the other justices concurred.