## STATE OF CONNECTICUT v. THOMAS N. PARMALEE
### (11596)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued May 1—decision released August 6, 1985

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *Austin J. McGuigan,* chief state's attorney, *John Dropick,* assistant state's attorney, and *Jeffrey Somers,* legal intern, for the appellee (state).

SANTANIELLO, J. The defendant, Thomas Parmalee, was convicted by a jury of second degree arson in violation of General Statutes (Rev. to 1981) § 53a-112.[1] At the time of the offense the statute provided that a person is guilty of second degree arson when he starts a fire "(1) [w]ith intent to destroy or damage a building . . . to collect insurance for such loss; and (2) such act subjects another person to a substantial risk of bodily injury or another building to a substantial risk of destruction or damage." General Statutes § 53a-112 (a). At trial, the state introduced evidence that the fire started by the defendant subjected neighboring buildings to risk of damage. The defendant claims on appeal that the state failed to prove beyond a reasonable doubt that these buildings were exposed to a "substantial risk."[2]

The jury could reasonably have found the following facts: The defendant intentionally set fire to his home in New Milford on February 19, 1981. At the time, the defendant was unemployed and faced possible foreclosure on the property. He had recently taken out fire insurance on the home and had asked a friend how to start a fire without anyone detecting that it was arson. The town fire marshal concluded that the fire was

---

[1] "[General Statutes (Rev. to 1981)]. Sec. 53a-112]. ARSON IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of arson in the second degree when he starts a fire or causes an explosion: (1) With intent to destroy or damage a building, as defined in section 53a-100, (A) of another, or (B) whether his own or another's, to collect insurance for such loss; and (2) such act subjects another person to a substantial risk of bodily injury or another building to a substantial risk of destruction or damage.

"(b) Arson in the second degree is a class B felony."

This section was substantially amended in 1982 by Public Acts 1982, No. 82-290, and again in 1984 by Public Acts 1984, No. 84-4. Reference to the section in this opinion will be to the 1981 version.

[2] The defendant initially raised three other issues in his brief concerning the sufficiency of the information charging him with arson. These claims, however, were subsequently withdrawn.

caused by arson. An eyewitness saw the defendant leaving his home while smoke was coming from the house.

Because the fire was reported soon after it was lit and the fire department was able to respond quickly, the fire was extinguished before it engulfed the entire house. The fire was effectively confined to the kitchen-dining area. Stuart Abseck, an expert in fire investigations, testified at trial that if the fire had not been quickly contained, the house would have burned easily because of its wood frame construction. The defendant's house was in a residential neighborhood and was surrounded by three other wood frame dwellings at distances of 102, 109 and 232 feet away. There was also an apartment house with a brick facade and a conventional roof seventy-eight feet away.

At trial, the state relied on Abseck's testimony to prove that the fire set by the defendant posed a substantial risk to surrounding structures. During direct examination by the state, Abseck testified in part as follows:

"Q. Based on your observations, the distances between the buildings and the materials of construction, the nature of the fire, your observations at the scene and your experience, do you have an opinion as to whether or not the fire in Mr. Parmalee's premises posed a substantial threat to the other structures surrounding him?

"A. Yes.

\* \* \*

"Q. What is your opinion, sir?

"A. My opinion is that that building posed a hazard if it were involved in fire.

"Q. Was it a substantial threat, sir?

"A. Yes."

The defendant's claim on appeal is that Abseck's testimony was insufficient to support a conviction for arson in the second degree because the state failed to show through the testimony that the fire posed a substantial risk to other buildings.

The defendant claims that General Statutes § 53a-112 requires the state to prove beyond a reasonable doubt that the fire posed not only a potential threat, but an actual threat to surrounding buildings. The defendant argues that because Abseck's testimony does not establish that there was an actual risk to the surrounding structures, there was insufficient evidence to convict him under the statute. Section 53a-112 requires that another building be exposed to a "substantial risk" but does not define the phrase. The dispositive question is not whether the statute requires proof of actual or potential risk but rather at what time the degree of risk is measured.[3]

"It is a fundamental principle of statutory construction that statutes are to be construed so that they carry out the intent of the legislature." *State* v. *Campbell,* 180 Conn. 557, 561, 429 A.2d 960 (1980); 2A Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. In construing a statute, this court will consider its plain language, its legislative history, its purpose and the circumstances surrounding its enactment. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Dukes* v. *Durante,* 192 Conn. 207, 214–15, 471 A.2d 1368 (1984). Identifying the societal problems which the legislature sought to address may be particularly helpful in determining the true meaning of the stat-

[3] This issue was raised but was not decided in *State* v. *Banks,* 194 Conn. 617, 619, 484 A.2d 444 (1984). In *Banks,* we held that there was sufficient evidence to find that the fire was a substantial risk to surrounding structures under General Statutes § 53a-112. We found the evidence sufficient even though the fire was extinguished before it spread to the adjoining structure. In *Banks,* however, we reserved judgment on the question to be decided today. Id., 619 n.5.

ute. *State* v. *Campbell,* supra, 562. Each word used by the legislature should be given effect and, as far as possible, the entire enactment is to be harmonized. *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978); *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 355–56, 402 A.2d 332 (1978).

First, the legislature has clearly indicated that it is the very act of starting a fire which is criminal under General Statutes § 53a-112. The statute provides that a person is guilty of arson in the second degree when "he *starts a fire* . . . (1) [w]ith intent to destroy or damage a building . . . and (2) such *act* subjects . . . another building to a substantial risk of destruction or damage." (Emphasis added.) General Statutes § 53a-112 (a). Liability is not predicated on how far the fire spreads before being extinguished; the statute looks only to the moment the fire was set to determine the criminality of the act.[4] If the legislature had meant to say that it is the fire which actually develops which must pose a "substantial risk," the legislature might have used the words "and (2) such *fire* subjects . . . ." From the actual language used, we can infer that the second element of the offense is satisfied if, at the time the fire was set, a reasonable person could have foreseen that the risk to another building was substantial. See *People* v. *Davis,* 89 Misc. 2d 535, 539, 392 N.Y.S.2d 195 (1977). Thus, even though the fire was put out before it could reach its full potential and ultimately posed no actual danger to surrounding buildings, the act of setting the fire placed another building at "substantial risk" within the meaning of § 53a-112.

Second, the statutory scheme and relevant legislative history of General Statutes §§ 53a-111 through

---

[4] The legislative commission which drafted the statute stated in its committee notes that under General Statutes § 53a-112 "the actor is guilty of arson even though the fire is extinguished before anything burns." (Unpublished notes from the state library archives.)

53a-114 demonstrate that the legislature sought to proscribe not only arson that places others in actual danger but also arson that gives rise to potential danger. Our arson statutes are based on parallel provisions of the New York Revised Penal Law and the Model Penal Code and similarly define the various grades of arson in terms of the degree of risk to human safety.[5] Report of the Commission to Revise the Criminal Statutes (1965) pp. 3, 13–14. Section 53a-111[6] (arson in the first degree) was aimed at penalizing those who create serious, actual risks to the life or safety of others. See Commission to Revise the Criminal Statutes, Connecticut Penal Code Comments (West 1972) p. 37.[7] Section 53a-112 was specifically directed to situations where a person intentionally burns another's building or where the actor burns his own building in order to collect insurance. "In either case . . . an essential element is danger to another person or another building. This requirement stems from the basic rationale behind the law of arson: protection of human life and safety. The inclusion of danger to another building (even if owned by the actor) is justified by the fact that buildings typically contain human beings, and thus danger to another

---

[5] The commission to revise the criminal statutes has stated in its commentary to the arson provisions that "the primary rationale of these sections is the protection of human life or safety. Thus, the various grades of arson differ depending on the degree of risk to human life." Commission to Revise the Criminal Statutes, Connecticut Penal Code Comments (West 1972) p. 36.

[6] "[General Statutes (Rev. to 1981)] Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury.

"(b) Arson in the first degree is a class A felony."

[7] Although we use the commission's commentary here as a guide for determining the intention of the legislature, the commentary was not officially adopted by the General Assembly and is not determinative.

building is likely to endanger another person's life or safety." Id. In § 53a-112, a lesser degree of risk is involved and it is apparently the creation of potential for harm that is sanctioned. The purpose of § 53a-113[8] (arson in the third degree) was to penalize those who actually damaged another's property through recklessness, and the purpose of § 53a-114[9] (arson in the fourth degree) was to penalize those who endanger another's property through recklessness. Id. The overall statutory scheme is plain: different degrees of punishment are imposed according to the different degrees of criminality involved. If we were to adopt the defendant's position and measure the degree of risk at the time a fire is actually extinguished, this scheme would not be effectuated and the differences between §§ 53a-111 and 53a-112 would be blurred. To keep § 53a-112 consistent with the legislature's overall statutory scheme, we hold that the size of the conflagration and the actual harm involved have no bearing on the arsonist's culpability under the section. The very act of setting the fire and placing others at substantial risk triggers liability under § 53a-112.[10]

---

[8] "[General Statutes (Rev. to 1981)] Sec. 53a-113. ARSON IN THE THIRD DEGREE: CLASS C FELONY. (a) A person is guilty of arson in the third degree if he recklessly causes destruction or damage to a building, as defined in section 53a-100, of his own or of another by intentionally starting a fire or causing an explosion.

"(b) Arson in the third degree is a class C felony."

[9] "[General Statutes (Rev. to 1981)] Sec. 53a-114. RECKLESS BURNING: CLASS D FELONY. (a) A person is guilty of reckless burning if he intentionally starts a fire or causes an explosion, whether on his own property or another's, and thereby recklessly places a building, as defined in section 53a-100, of another in danger of destruction or damage.

"(b) Reckless burning is a class D felony."

[10] In his brief the defendant refers to a passage from the report of the commission to revise the criminal statutes and uses it in support of his argument that the legislature intended to require that actual risk be proved. The passage essentially states that the commission opted for the phrase "substantial risk" over the phrase "reasonable possibility that such act might endanger" because the later standard was too low. The "reasonable possibility" standard was adopted in a New York proposal. The commission evi-

Furthermore, we note that if there are two possible interpretations of a statute and one alternative proves unreasonable or produces the possibility of bizarre results, then the more reasonable alternative should be adopted. *State* v. *Campbell,* supra. The law favors a rational statutory construction and we presume that the legislature intended a sensible result. *Peck* v. *Jacquemin,* supra, 66. The defendant's interpretation of General Statutes § 53a-112 would condition liability under the statute on such factors as the efficiency of the area fire department, the fire's proximity to the firehouse, the speed at which the fire was reported and the weather. But the legislature did not intend that the crime of arson be dependent on such conditions. It would be bizarre to relieve an arsonist of liability because of the hard work and skill of those who put the fire out. It is more reasonable to conclude that the legislature intended arsonists to be held culpable under § 53a-112 for creating substantial risks to other buildings, regardless of how close such risks come to being fulfilled.

The expert testimony that the possibility of full involvement of the house and fire posed a substantial threat to the other buildings was thus sufficient to support the defendant's conviction. See *State* v. *Banks,* 194 Conn. 617, 621 484 A.2d 444 (1984).

There is no error.

In this opinion the other judges concurred.

---

dently felt that "almost any fire or explosion involves a 'reasonable possibility' of danger, since most fires attract bystanders." Report of the Commission to Revise the Criminal Statutes (1965) p. 14. While it is true that the legislative commission adopted the higher standard of "substantial risk," it does not follow that they intended to equate "substantial risk" with "actual risk."